FILED

2011 AUG 25   AM 10: 58

BY_____

1  DANIEL G. BOGDEN
   United States Attorney
2  PATRICK WALSH
   Assistant United States Attorney
3  333 Las Vegas Blvd., Suite 500
   Las Vegas, Nevada 89101
4  Telephone: (702) 388-6336
   Fax: (702) 388-6698
5

6                    **UNITED STATES DISTRICT COURT**

7                         **DISTRICT OF NEVADA**

8                                 *-oOo-*

9  UNITED STATES OF AMERICA,          )    Case No.   2:11-mj-574-GWF
                                      )
10           PLAINTIFF,               )    COMPLAINT
                                      )
11 v.                                 )    Title 18, U.S.C. § 371: Unauthorized
                                      )    selling of US Military Property;
12 JOHN CALL and MARCO ANTONIO        )    18 U.S.C. 641; Conspiracy to commit
   REYES,                             )    offense or to defraud United States
                                      )
13           DEFENDANTS.              )

14         BEFORE the United States Magistrate Judge, Las Vegas, Nevada, the undersigned

15 complainant, being first duly sworn, deposes and says:

16                                **COUNT 1**

17         **(Conspiracy to commit offense or defraud US Government)**

18         Beginning at a date unknown and continuing to on or about August 09, 2011, in the

19 Federal Judicial District of Nevada, John CALL and Marco Antonio REYES, the defendant(s) did

20 knowingly and intentionally combine, conspire, confederate and agree together, with each other, and

21 with others known and unknown, to commit offenses or defraud the United States Government, in

22 violation of Title 18, United States Code, Section 371.

23                                **COUNT 2**

24                    **(Embezzlement of Public Property)**

25         On or about August 09, 2011, in the Federal Judicial District of Nevada, John CALL,

26 and Marco Antonio REYES, the defendant(s) willfully and knowingly did embezzle, steal, purloin and

convert to defendant's use U.S. Military equipment and restricted items of the value exceeding $1,000 in United States Currency which are goods and property of the United States, in violation of Title 18 U.S.C. § 641.

Complainant, as a Special Agent with the Air Force Office of Special Investigations, states the following as and for probable cause:

1.   I am a Special Agent with the Air Force Office of Special Investigations, (hereinafter referred to as AFOSI), assigned to Detachment 206 at Nellis Air Force Base, Nevada. I have been so employed by AFOSI since September 2010.   Your affiant has completed the twelve-week Basic Investigations Course known as the Criminal Investigator Training Program (CITP) at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia, followed by a six-week AFOSI Academy. I have participated in investigations involving threats of terrorism against the United States and the Department of Defense. I have executed multiple search warrants, to include those involving searches and seizures of stolen military property. As a Special Agent, I am authorized to investigate violations of the laws of the United States, and I am a law enforcement officer with authority to execute warrants issued under the authority of the United States.

2.   The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.   There is probable cause to believe that violations of Title 18, United States Code, Sections 371 and 641 (relating to conspiracy to steal and the theft and embezzling of U.S. military property) have been committed by John Call (hereinafter "CALL") and M. Antonio Reyes (hereinafter Reyes).

4.   CALL who is a civilian is the operator of CITADEL GUN and SAFE, located 4305 Dean Martin Dr. Ste 165, Las Vegas, NV 89103 and 4315 Dean Martin Dr. Ste 217, Las Vegas, NV 89103.

2

5.      Additionally, REYES  who is a Nevada Army National Guardsman, assigned to the 17th Sustainment Brigade located at 4500 W Silverado Ranch Blvd. is responsible for stealing and selling stolen and U.S. military property belonging to the Department of Defense.  Additionally, I have reason to believe REYES has completed sales transactions, has attempted to sell, or converted for his own use the stolen military property for money in violation of Title 18 United States Code, Section 641.  Furthermore, I have reason to believe REYES has used his position as an Army Guardsman in furtherance of the conspiracy against the United States Government, in violation of Title 18, United States Code, Section 371.

6.      On or about 14 June 2011, a confidential source of information herein referred to as CS-1 told me a pallet of military-specification body armor plates was stolen from Nellis AFB, NV (NAFB), in Dec 2010 or Jan 2011, and that CALL was in possession of the stolen property.

7.      On or about 30 July 2011, CALL informed CS-1 he was in possession of ten military-specification body armor plates and was willing to sell the items.  CALL told CS-1 that he was able to access and receive more military gear from "a guy".  CALL would not provide CS-1 with the contact information or identity of his unnamed contact, but assured CS-1 he would be able to secure more stolen military property.

8.      On 1 August 2011, CS-1 participated in an AFOSI controlled operation and purchased the following military property from CALL at CITADEL GUN and SAFE for $920.00: two (2) military-specification body armor plates (one (1) new in shipping packaging), two (2) interceptor vests (used for carrying the body armor plates while worn), two (2) military specification Infrared (IR) strobe lights, and one new military specification chemical warfare suit with associated equipment. During the sale, CALL informed CS-1 that military strength laser pointers, additional IR strobes, and more military-specification body armor plates were being stored at CALL's residence, 5700 Turkey Ln, Las Vegas, NV 89131.

.  .  .

.  .  .

3

9.      On 8 August 2011, SA GABRIEL LAJEUNESSE, AFOSI, spoke with ANDY HANKS, Sales and Marketing, CAPCO INC, the makers of the M-192 Heavy Weapons mount. HANKS informed SA LAJEUNESSE the M-192 Heavy Weapons was sold exclusively to the Department of Defense (DoD) since 2004. At this time, no commercially available M-192 Heavy Weapons mounts are available. Furthermore, HANKS stated any M-192 Heavy Weapons mounts that are available commercially are unauthorized and done without the consent or permission of CAPCO Inc and the DoD. HANKS advised that any authentic M-192 Heavy Weapons mount sold to DoD would be stamped with "04099" on one of the feet and also on the Traversing and Elevation (T&E) device. Finally, HANKS advised any M-192 Heavy Weapons mount shipped to DoD would be accompanied by a Technical Manual detailing the specific operating instructions. Printed on the cover of the technical manual are two conspicuous warnings stating the use of the M-192 Heavy Weapons mount is exclusively for the U.S. Armed Services and the item is export controlled.

10.     On 9 August 2011, CS-1 participated in an AFOSI controlled operation and purchased the following military property from CALL at CITADEL GUN and SAFE for $950.00: One (1) M-192 Heavy Weapons mount (with "04099" stamped on one of the feet and under the T&E) and one (1) box containing 12 Meals Ready to Eat (MRE). Printed on the box of MREs are the words "U.S. GOVERNMENT PROPERTY COMMERCIAL RESALE IS UNLAWFUL". The M-192 Heavy Weapons mount was contained in a blue plastic bag. CALL also provided CS-1 with a long green case containing eight rifles of unknown make, model, or caliber. CALL informed CS-1 the weapons contained in the green case were not part of the stolen military equipment purchase. During the operation, CS-1 entered the public entrance of CITADEL GUN and SAFE located at 4305 Dean Martin Dr. Ste 165, Las Vegas, NV 89103. In the public area of the business, CALL showed CS-1 a bag containing six (6) interceptor vests, with the military-specification body armor plates therein. CS-1 witnessed a number of the interceptor vests to have the newest camouflage pattern available to the Armed Services. Also, CALL showed CS-1 a military-specification Ground Signaling Laser and the associated technical manual. After showing CS-1 the stolen military property located in the public

4

area of the business, CALL and CS-1 traveled to the CITADEL GUN and SAFE storage facility located immediately south west of the public business. The storage facility is physically located at 4315 Dean Martin Dr. Ste 217, Las Vegas, NV 89103. Inside the storage facility, CS-1 witnessed a large number of military chemical warfare suits and associated gear in the original vacuum packaging, two (2) pallets of MREs with approximately 30 boxes on each pallet, a large number of IR strobes, and an amount of Night Vision Goggles (NVGs). Also, CS-1 observed a number of weapons systems including a Barrett .50 Caliber sniper rifle that was physically positioned on a tripod and fully loaded. In addition, CS witnessed a large number of complete and assembled rifles in the storage facility. CS-1 informed AFOSI that CITADEL GUN and SAFE was not authorized to be in possession or sell any weapons systems from the business due to the Bureau of Alcohol, Tobacco, and Firearms (BATF) revoking the business' Federal Firearms License (FFL) for providing weapons to Mexican nationals. Again, CALL informed CS-1 that he was willing to sell more stolen military property in the future and a large amount was being stored at his residence. During this specific operation, all conversations between CS-1 and CALL were recorded on consensual body wire worn by CS-1.

11.     On 9 August 2011, SA MATTHEW BLOCKER witnessed CS-1 and CALL walk through an alley immediately adjacent to CITADEL GUN and SAFE. SA BLOCKER witnessed CS-1 carrying a light blue bag and CALL carry a long green case.

12.     On 9 August 2011, SA ANDREW O'GRADY, AFOSI, searched CS-1's vehicle after the operation and witnessed a long green case containing approximately eight rifles of unknown make, model, or caliber.

13.     On 10 August 2011, SA LAJEUNESSE spoke with BEV ANDERS, Sales Administrator, WARNACK FOODS, the company that makes and sells MREs to the U.S. Miltiary. ANDERS advised any MREs produced are sold exclusively to DoD and are not for commercial resale. Furthermore, ANDERS advised any complete pallets of MREs not located in a U.S. Government facility would be an indicator of theft.

.   .   .

5

On 10 August 2011, SA JOSEPH BOYNTON, AFOSI, contacted TOM MULCONRY, Defense Logistics Agency (DLA). MULCONRY advised any Interceptor vests and military-specification body armor plates sold through civilian commercials channels was not authorized by under current laws governing those items.

14. On 10 August 2011, SA SHAWN KENNEDY, AFOSI, reviewed the International Traffic in Arms Regulation (ITAR) Munitions Lists, 22 CFR Ch. 1. § 121.1 Category XII-Fire Control, Range Finder, Optical and Guidance and Control Equipment Paragraph (c) identifies "image intensification and other night seeing equipment or systems specifically designed, modified, or configured for military use" as export controlled items. The IR strobes, Ground Signaling Laser, and NVGs are designed for and in exclusive use by the U.S. Armed Services.

15. On 15 Aug 2011, SA BLOCKER reviewed Nevada Department of Motor Vehicles (NDMV) files which revealed CALL has listed 5700 Turkey Ln., Las Vegas, NV 89131, as his residence.

16. During the course of the investigation, CS-1 has received multiple text messages and phone calls from CALL related to the stolen military. CALL utilized his cellular phone, number (702) 372-5813 to arrange these transactions. On 8 August 2011, CALL used his cell phone to send a number of text messages related to the items he was planning to sell to CS-1. CALL informed CS-1 that he was in possession of heavy weapon tripods and was willing to sell the items to CS-1. On 15 August 2011, CALL sent a text message to CS-1 asking him to have a customer call him to arrange details of a sale of military equipment on 16 August 2011. On 15 August 2011, SA IMPELLIZZERI, an AFOSI Undercover Agent, contacted CALL on his cell phone and arranged a purchase of stolen military equipment for 16 August 2011. CALL informed SA IMPELLIZZERI that he would provide heavy weapons mounts, NVGs, body armor, and a variety of other equipment to SA IMPELLIZZERI. The 15 August 2011 call was recorded in an audio intercept.

. . .

. . .

6

17.     On 16 August 2011, SA KENNEDY witnessed a white Ford "Dually" pick-up truck backed up to the front door of 5700 Turkey Ln., Las Vegas, NV 89131.  At 0823 hours, the pick-up truck left the residence and traveled in the direction of New Frontier Armory, 150 East Centennial Pkwy Ste 110, North Las Vegas, NV 89084. SA KENNEDY viewed what appeared to be a black tarp covering unknown items in the bed of the aforementioned pick-up truck.  At 0841 SA Adam Arnold observed a white Ford "Dually" pick-up truck driven by CALL pulled behind New Frontier Armory and CALL began to unload items from his vehicle into the store.

18.     After CALLs arrival at 0841 on 16 August at New Frontier Armory he met with CS-1 and SA JASON IMPELLIZZERI to negotiate prices for equipment to be sold.  CALL and SA IMPELLIZZERI negotiated a price of $3700 for the purchase of 1 multi-cam body armor vest, 2 heavy weapons mounts (new in packaging), chemical warfare suits (new in packaging), an illumination signal kit, a laser ground pointer and a few other miscellaneous items.  One of the heavy weapons mounts was the same type of M-192 mount purchased by CS-1 on 9 Aug, with the CAPCO cage code stamped in the elevation lever.  Most of the items had US government national stock numbers printed on them.  CALL made arrangements to meet SA IMPELLIZZERI at a future date to show him additional military gear. SA IMPELLIZZERI paid CALL $3700.  The entirety of the conversation between CALL and SA IMPELLIZZERI was recorded in an audio intercept.

19.     On 16 August 2011 at 0916 hrs, CALL, CS-1, and SA IMPELLIZZERI began loading the stolen military equipment into the vehicle of SA IMPELLIZZERI.  A video recorder, placed in view of the rear of the storefront by Investigator Timothy McCarthy, captured CALL assisting in the loading of the gear into SA IMPELLIZZERI'S vehicle.

20.     On 3 August 2011, CS-1 participated in an AFOSI operation.  The design of the operation was to test CS-1's reliability, trustworthiness, and ability to following AFOSI instructions.  The goal of the operation was for CS-1 to purchase a set of AFOSI controlled NVGs from an undercover (UC) law enforcement official.  After the purchase, both CS-1 and the UC were debriefed regarding the operation.  UC and AFOSI determined CS-1 followed all instructions

7

given, provided all currency used in the operation to the UC, was forthcoming with all operational details. Additionally, CS-1 has been tested throughout the AFOSI controlled purchases related to CALL and passed all such tests successfully. At no time during the relationship with AFOSI officials, has CS-1 misled or provided false or incomplete information. CS-1 is a thirteen year veteran of the U.S. Air Force and has no history of disciplinary problems. During his career, CS-1 has deployed multiple times to active combat zones and has participated in armed military convoys. CS-1 is currently undergoing a medical evaluation process related to digestive tract issues to determine his suitability for military service.

21.     On 19 August 11, SA IMPELLIZZERI arrived at the back parking lot of the Alliante Station Casino, 7300 Alliante Parkway, North Las Vegas, NV at approximately 0700 hrs to buy equipment from CALL. CALL arrived at approximately 0825 hrs. CALL asked for $10,600 U.S. Dollars for the equipment he brought. SA IMPELLIZZERI asked CALL if he would accept $10,300 and he agreed. SA IMPELLIZZERI provided CALL $10,300 U.S. Dollars and he put the money in the pocket behind the driver's seat in his vehicle. SA IMPELLIZZERI and call transferred the equipment from CALL's vehicle to the SA IMPELLIZZERI vehicle, Ford Rockwood Recreational Vehicle. The equipment was a thermal imaging system, heavy weapons mount, 2 boxes of meals ready to eat, seismic detection unit, and 4 level IV ballistic plates. As SA IMPELLIZZERI and CALL were carrying the equipment to SA IMPELLIZZERI's vehicle they were apprehended.

22.     On 19 August 11, subsequent to rights advisement, CALL provided the following information:  CALL purchased military equipment from several individuals over the last year and resold them to various clients through his store, CITADEL GUN and SAFE.  CALL suspected that many of the items were stolen military property.  CALL said he bought approximately six sets of ballistic plates and several ballistic vests from one individual over the last year for $100-$150 per set of plates and $200 for vests. CALL became aware that these plates had come from an Air Force member in early Aug 2011, when that Air Force member had offered to sell some ballistic plates to CALL. Over the last few months CALL had been purchasing military gear from

8

TONY REYES. REYES sold CALL M192 heavy weapons mounts for $400 each, chemical warfare suits for $35, and Meals Ready to Eat (MREs) for $30 per case. REYES delivered 100 cases of MREs in multiple pallets, new military chemical warfare gear, and several M192 weapons mounts to CALL in early August 2011. CALL suspected the items were stolen due to the large volume that REYES delivered. Call has also purchased what he suspected to be stolen military equipment from other individuals. CALL suspected all these items might be stolen military property. CALL provided a signed sworn statement.

23. On 19 August 2011, subsequent to rights advisement, DAVE GAGLIARDI, employee of CITADEL GUN and SAFE provided the following information: GAGLIARDI had seen CALL receive a number of items for sale in his store that he suspected were stolen military property. Starting approximately summer 2010, CALL began receiving ballistic plates from an Air Force member. On at least one occasion, GAGLIARDI witnessed this Air Force Member provide CALL with a set of ballistic plates. GAGLIARDI later saw 6-8 sets of ballistic plates for sale in the store, and assumed they had been provided by the same Air Force Member. Separately, CALL purchased truck loads of MREs and chemical suits from an Army Sergeant, REYES. GAGLIARDI never asked any questions about the military gear, and never personally profited from the sale of the gear. CALL did all the purchasing for CITADEL GUN and SAFE. GAGLIARDI provided a signed sworn statement.

24. On 19 August 2011, subsequent to rights advisement, the U.S. Air Force Member referred to above, provided the following statement: He admitted to stealing 6-8 sets of ballistic plates and four ballistic vests (three in desert camouflage uniform-DCU-pattern, one in army combat uniform-ACU-pattern) from 99 Logistics Readiness Squadron, NAFB, NV. This Air Force Member gave them to CALL in exchange for store credit at Citadel Gun and Safe. He also admitted to stealing several other miscellaneous items from 99 LRS to include, canteens, web-belts, ponchos, helmets, and gas masks, which he provided to CALL.

. . .

25.     On 19 August 11, CALL agreed to cooperate with law enforcement and made several calls to his suppliers.  All calls were recorded.  CALL contacted several individuals to purchase additional stolen military gear.  CALL contacted REYES and asked if REYES had any more heavy weapons mounts.  REYES said he would check and also said he was trying to get 10-20 surefire flashlights for CALL.  CALL mentioned that the MRE were selling well and asked REYES to keep him in mind for future sales.  REYES said he would.

26.     On 19 August 11, SA's JOSEPH MOOS and SHAWN KENNEDY escorted CALL through his place of business, Citadel Gun and Safe and identified all readily identifiable military equipment and supplies.  CALL provided the following information on where all items came from: from an individual identified as TONY REYES the following items: 84 cases of Meals Ready to Eat (MRE's), 37 individual MRE's, 34 ten count boxes of Tactical ChemLights, 40 Joint Service Lightweight Integrated Suit Technology (JLIST) chemical suits ensembles (coat, trousers, helmet cover, overboots, glove inserts, decontamination kits, and detection paper), and 11 gas masks.

27.     CALL was released without arrest or processing. REYES was arrested and is currently held at the Henderson Detention Facility, NV.


Steven Cox, Special Agent
Air Force Office of Special Investigations


SUBSCRIBED and SWORN to before me
this 25ᵗʰ day of August, 2011.


UNITED STATES MAGISTRATE JUDGE

10