# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

            Plaintiff,

vs.

JONATHAN CALL,

            Defendant.

Case No. 2:12-cr-00163-LDG-CWH

**ORDER**

**Motion to Prohibit the Defendant From Possessing Firearms and Ammunition - #37**

This matter is before the Court on the Government's Motion to Prohibit the Defendant from Possessing Firearms and Ammunition (#37), filed on May 21, 2012; Defendant's Opposition to the Government's Motion to Prohibit the Defendant from Possessing Firearms and Ammunition (#38), filed on May 23, 2012; and the Government's Reply [in support of] Motion to Prohibit the Defendant from Possessing Firearms and Ammunition (#41), filed on May 30, 2012.

## BACKGROUND

Defendant Jonathan Call was initially charged in a criminal complaint, filed on August 25, 2011, with a conspiracy to defraud the United States Government in violation of 18 U.S.C. §371 and embezzlement of public property in violation of 18 U.S.C. §641. *Complaint (#2)*. The complaint alleged that Mr. Call is the operator of a business known as Citadel Gun & Safe. It further alleged that Mr. Call had received and sold, or offered to sale, stolen United States military equipment including military-specification body armor plates, interceptor vests, military-specification infrared strobe lights, a chemical warfare suit, military strength laser pointers, M-192 Heavy Weapons mounts, boxes of Meals Ready to Eat ("MRE's"), and night vision goggles. The complaint also alleged that Mr. Call or Citadel Gun & Safe was in possession of a large number of

firearms, although there was no allegation that any of the firearms were stolen or illegal.  Mr. Call made his initial appearance before the Court on the criminal complaint on September 21, 2011.  At that time the Court scheduled a preliminary hearing and imposed conditions of pretrial release on Mr. Call which included the standard condition that Defendant not violate any federal, state or local law while on release.  *Defendant's Appearance Bond  and Order Setting Conditions of Release (#14)*.

On September 28, 2011, the Government filed a petition for action on conditions of pretrial release which requested that the following conditions be added to Defendant's conditions of release:

1. Pretrial Services Supervision.
2. Refrain from the use or possession of a firearm, destructive device or other dangerous weapon.
3. Surrender all firearms, destructive devices or other dangerous weapons to a third party within 72 hours.
4. Defendant is restricted from the sale of firearms in a personal or business capacity, however, may continue to sell firearms parts and accessories in Citadel Gun & Safe.

*Petition for Action on Conditions of Pretrial Release (#15, #16)*.

The Court conducted a hearing on the petition on October 6, 2011.  The Court granted the petition by adding the condition that Defendant refrain from possessing firearms, destructive devices or other dangerous weapons, with the exception that Defendant was allowed to keep three identified firearms at his residence for the protection of himself and his family.  The Court further ordered that Defendant surrender all other firearms to a third party within 72 hours and prohibited Defendant from selling firearms in a personal or business capacity, but permitted him to sell his existing firearms on consignment so long as the seller's (consignee's) name was provided to pretrial services.  *Amended Appearance Bond and Order Setting Conditions of Pretrial Release (#21)*, filed October 6, 2011.  Although the conditions proposed in the Petition (#15, #16) provided that Defendant "may continue to sell firearms parts and accessories in Citadel Gun & Safe," this limitation was not included in the *Amended Appearance Bond and Order Setting Conditions of Release (#21)*.  This was an oversight by the Court and was not an intentional rejection of that limitation.  The petition and order did not expressly address the sale of ammunition.  The Court is

informed Citadel Gun & Safe continued to sell ammunition after entry of the order on October 6, 2011.[1]

Mr. Call was indicted on May 9, 2012 on two counts of theft of government property having a value in excess of $1,000.00 in violation of 18 U.S.C. §641 and 18 U.S.C. §2. *Indictment (#30)*. A person convicted for a violation of §641 may be imprisoned for not more than 10 years. 18 U.S.C. §922(n) makes it "unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Based on this statute and the indictment, the Government requests that Mr. Call's conditions of pre-trial release be modified to prohibit him from possessing any firearms or ammunition. The Government's motion includes the three firearms that Mr. Call has been authorized to keep for home protection as well as ammunition for those firearms. The Government also asserts that Mr. Call cannot work in or operate a store that sells ammunition without violating §922(n).

## DISCUSSION

**1.    Defendant's Possession of Three Firearms for Self Defense Purposes.**

18 U.S.C. §922(n) does not make it unlawful for a person under indictment to possess firearms or ammunition that he received prior to the indictment. *See United States v. Laurent*, — F.Supp.2d —, 2011 WL 6004606, *2 (E.D.N.Y. 2011) ("By its own terms, §922(n) does not prohibit *possession* of a weapon by someone under indictment, but only shipping, transportation or *receipt*.") *Id.* at *6. To prove a violation of §922(n), "the government is required to demonstrate that the defendant received the weapon *after* indictment." *Id.* at *2. *See also United States v. Adams*, 2011 WL 1475978 (S.D. Ala. 2011) (dismissing an indictment under §922(n) that charged only possession). Prior to indictment, the Court authorized Mr. Call to keep three identified firearms at home for defense of himself and his family. *Amended Appearance Bond and Order*

---

[1] The Defendant no longer has a license to sell firearms and therefore did not oppose the condition that he not sell firearms.

3

*Setting Conditions of Pretrial Release (#21).* There is no allegation that Mr. Call has engaged in any conduct that would now justify an order prohibiting him from possessing the firearms or ammunition for those firearms. The Court therefore denies the Government's motion to the extent it seeks to prohibit Mr. Call from possessing the three firearms that the Court previously authorized him to keep.

**2. Whether §922(n) Prohibits Mr. Call From Working in a Business that Sells Ammunition.**

The next issue is whether 18 U.S.C. §922(n) prohibits Mr. Call from continuing to work at Citadel Gun & Safe so long as its business includes the sale of ammunition. Pursuant to 18 U.S.C. §3142(b), Mr. Call's conditions of pretrial release state that he "must not violate any federal, state or local law while on release." *Defendant's Appearance Bond and Order Setting Conditions of Release (#14), Condition No.(1)*. Thus, the prohibition in §922(n) is already a condition of Mr. Call's release to the extent the statute is valid and applies to his conduct.

In *United States v. Craven*, 478 F.2d 1329 (6th Cir. 1973), the defendant was convicted under 18 U.S.C. §922(h)(1), the predecessor statute to §922(n), based on his receipt of a firearm after he was indicted on a state felony charge. The defendant appealed on the grounds that the government failed to show that he possessed the subject firearm and that proof of possession was not sufficient to prove receipt. In affirming the conviction, the Sixth Circuit stated that possession may be either actual or constructive. "Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession, but instead knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others." *Id.* 478 F.2d at 1333. Although the quoted statement was made in regard to other counts on which defendant was convicted, the court applied the same definition of possession in regard to the charge under §922(h)(1). The court stated:

> The prosecution produced evidence sufficient to warrant a jury in finding that Craven had constructive possession of the revolver. The government's proof indicated that the defendant had, at a minimum, joint constructive possession of the house and that only eight days prior to the date the defendant was charged with possessing the

> weapon, he was seen in the master bedroom of the residence sitting in bed with a revolver which looked like the firearm named in Count IV lying on the bed.

*Craven*, 478 F.2d at 1335.

The court also held that evidence of possession was circumstantial evidence that the defendant received the firearm:

> Since one cannot possess something, either actually or constructively, without receiving it, either actually or constructively (except when the possessor manufactures it himself), receipt under 18 U.S.C. § 922(h)(1) may be shown circumstantially by proving possession, at least where no significant passage of time has elapsed between the interstate transportation and proof of possession, and no intervening intrastate transactions have occurred.

*Id.* 478 F.2d at 1336-37.

Defendant argues that he should not be prohibited from working at Citadel Gun & Safe so long as he is not personally involved in the receipt, shipment or transport of ammunition. Defendant compares his situation to that of an individual under indictment who works in a sporting goods store or at Wal-Mart where ammunition is received and sold. Defendant argues: "Surely Walmart would not be required to stop ordering and selling ammunition and surely the employee would not be forced to quit his job at Walmart if he would have no involvement with the handling, ordering, shipping, or selling of ammunition." *Defendant's Opposition (#38), pg. 13.* Defendant argues that the prohibition in §922(n) can be satisfied by adding the condition that "Mr. Call not personally order, touch, ship and sell ammunition." *Id.* Defendant indicates that other employees of Citadel Gun & Safe would conduct business activities relating to ammunition sales.

The fallacy of Defendant's Wal-Mart analogy and proposed condition is that they do not address Mr. Call's apparent dominion and control over the operations of Citadel Gun & Safe, including the sale of ammunition. Mr. Call's continued operational control over that business is problematical under §922(n), regardless of whether or not he "personally" orders, touches, ships or sells ammunition. The issue is not simply whether a particular condition of pretrial release must or should be imposed. A willful violation of §922(n) is a criminal offense punishable by imprisonment for up to five years and a $250,000 fine. *See* 18 U.S.C. §924(a)(1)(D) and 18 U.S.C. §3571(b)(3). *See also United States v. Hayden*, 64 F.3d 126 (3rd Cir. 1995); *United States v.*

*Laurent*, 2011 WL 6004606, at *16.  If Mr. Call's continued employment at Citadel Gun & Safe involves him either directly or indirectly in the receipt, shipment or transportation of ammunition, then he may not continue to work there while under indictment unless §922(n) is unconstitutional on its face or as applied to Defendant.

  **3.**  **Whether 18 U.S.C. §922(n) is Unconstitutional on its Face or as Applied to Defendant.**

  Defendant argues that 18 U.S.C. §922(n) is unconstitutional on its face because it violates the Due Process Clause of the Fifth Amendment. The Due Process Clause provides that no person shall be deprived of life, liberty or property without due process of law.  Due process requires some form of hearing before a person is deprived of these interests.  *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893 (1976).  Generally, the opportunity to be heard must be granted at a meaningful time and in a meaningful manner.  *Hamdi v. Rumsfeld*, 542 U.S. 507, 533, 124 S.Ct. 2633, 2649 (2004); *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191 (1965).  A two step analysis governs procedural due process claims.  The first step asks whether there exists a liberty or property interest which has been interfered with by the government.  The second step examines whether the procedures attendant upon the deprivation were constitutionally sufficient.  *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006), *overruled in part on other grounds in Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010).  *See also Matthews v. Eldridge*, 424 U.S. 319, 334-35, 96 S.Ct. 893 (1976).

  To successfully challenge a statute on its face, the defendant must show that no set of circumstances exists under which the statute would be valid.  *United States v. Laurent*, 2011 WL 6004606, at *15, citing *Ohio v. Akron Ctr. for Reproductive Health*, 497 U.S. 502, 514, 110 S.Ct. 2972 (1990) and *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2972 (1987).  Because of this requirement, *United States v. Peeples*, 630 F.3d 1136, 1138 (9th Cir. 2010) states that a facial challenge to a legislative act is the most difficult challenge to mount successfully.  The court in *Peeples* rejected a facial challenge to the mandatory curfew and electronic monitoring pretrial conditions in the Adam Walsh Act based on the Due Process Clause and the Eighth Amendment's prohibition against excessive bail.  The court held that notwithstanding the mandatory requirements

of the Adam Walsh Act, the district court retained sufficient discretion as to how or in what manner the curfew and electronic monitoring conditions are imposed to survive a constitutional challenge of facial invalidity. The court also rejected the defendant's "as-applied" challenge based on its findings that the magistrate judge set the release conditions after making an individualized determination of defendant's circumstances. *See also United States v. Stephens*, 594 F.3d 1033 (8th Cir. 2010).

Similar to the defendant in *Peeples*, Mr. Call argues that 18 U.S.C. §922(n) conflicts with 18 U.S.C. §3142(c)(1)(B) of the Bail Reform Act, which provides the court shall order the pretrial release of the person "subject to the least restrictive condition or combination of conditions" that the judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community. Defendant argues that §922(n) mandates a condition of pretrial release regarding firearms and ammunition for every person under indictment regardless of the crime charged and regardless of the particular facts in any given case. *Opposition (#38), pg. 4*. Defendant argues that this requirement violates his right to keep and bear arms as protected by the Second Amendment to the Constitution.

In *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008), the Supreme Court held that the Second Amendment protects an individual's right to keep and bear arms. In so holding, the Court stated that the inherent right of self-defense, particularly in the home, is central to the Second Amendment right. *Id.* 128 U.S. at 2817. In *McDonald v. City of Chicago*, ___U.S. ___, 130 S.Ct. 3020 (2010), the Court held that the right to keep and bear arms is a fundamental right and applies to the states pursuant to the incorporation doctrine of the Fourteenth Amendment. In so holding, the Court stated that self-defense is a basic right recognized by many legal systems from ancient times to the present day, and that individual self-defense is the central component of the Second Amendment right. In both *Heller* and *McDonald*, the Court declared invalid local ordinances which had the effect of prohibiting the possession of handguns by law abiding individuals. *McDonald* reiterated the statement in *Heller* that "the [Second Amendment] right applies to handguns because they are the most preferred firearm in the nation to 'keep' and use for the protection of one's home and family." *McDonald*, 130 S.Ct. at 3036.

*Heller* also stated:

> Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. (Citations omitted) . . . Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Heller*, 128 S.Ct. at 2816-17.

The Court further noted that the foregoing identification of presumptively lawful regulatory measures did not purport to be exhaustive. *Id.* at 2817 n. 26.

In the wake of *Heller* and *McDonald*, the Courts of Appeal have been called on to decide whether various laws regulating firearms violate the Second Amendment. In deciding these cases, the courts have also been required to determine the appropriate standard of scrutiny to be applied to a particular law.

"'[T]he Second Amendment can trigger more than one particular standard of scrutiny,' depending, at least in part, upon 'the type of law challenged and the type of [Second Amendment] restriction at issue.'" *United States v. Reese*, 627 F.3d 792, 801 (10th Cir. 2010), quoting *United States v. Marzzarella*, 614 F.3d 85, 96-97 (3rd Cir. 2010). *United States v. Marzzarella* concerned the validity of 18 U.S.C. §922(k) which prohibits the possession of firearms with obliterated serial numbers. The Third Circuit applied an intermediate standard of scrutiny because the burden imposed by the law did not severely limit the possession of firearms in the manner that the laws struck down in *Heller* and *McDonald* did. Under the immediate standard of scrutiny, the law passes constitutional muster if it serves a significant, substantial or important government interest and the fit between the challenged law and its objective is reasonable, not perfect. Under this standard, the court upheld §922(k).

In *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010), the Seventh Circuit also applied the standard of intermediate scrutiny in upholding 18 U.S.C. §922(g)(9) which prohibits any person

8

convicted of misdemeanor domestic violence from possessing firearms. The court inferred from *Heller* that some categorical disqualifications regarding firearms are permissible and that "'Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons, nor need these limits be established by evidence presented in court.'" *Reese*, 627 F.3d at 802, quoting *Skoien*, 614 F.3d at 641.

In *United States v. Reese*, the court was called on to decide the validity of 18 U.S.C. §922(g)(8) which prohibits a person against whom a domestic protection order has been entered from possessing firearms. The court stated that like §922(g)(9), the statute prohibits the possession of firearms by narrow classes of persons who, based on their past behavior, are more likely to engage in domestic violence. *Id.* 627 F.3d at 802. The court therefore concluded that §922(g)(8) was subject to intermediate scrutiny. In upholding the statute, the court cited studies showing the increased danger of death by firearms in domestic abuse situations. The statute reasonably furthered the objective of protecting potential victims of domestic abuse from the increased risk of death or injury posed by firearms.

Recently, in *United States v. DeCastro*, ___F.3d ___, 2012 WL 1959072 (C.A. 2 (N.Y.)) (decided June 1, 2012), the Second Circuit, applying the intermediate standard of scrutiny, upheld 18 U.S.C. §922(a)(3), which prohibits anyone other than a licensed importer, manufacturer, dealer or collector from transporting into his state of residence a firearm purchased or obtained outside that state. The court stated that the evident purpose of §922(a)(3) is to stop the circumvention of state laws regulating gun possession. The court held that the statute did not substantially burden the defendant's right to keep and bear arms because it does nothing to prevent someone from purchasing a firearm in his or her home state, which is presumptively the most convenient place to buy anything. Because it rejected defendant's as-applied challenge, the court also rejected defendant's facial challenge to the statute.

Finally, in *United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011), the Fourth Circuit upheld a former federal regulation, 36 C.F.R. §2.4(b), which prohibited "carrying or possessing a loaded weapon in a motor vehicle" within national park areas. The court also applied the intermediate standard of scrutiny in holding that the regulation was reasonably adapted to the

government's substantial interest in public safety in national parks. The court also stated that the regulation was reasonably limited in its application since it only prohibited the possession of loaded firearms in motor vehicles within national park areas.

The constitutionality of 18 U.S.C. §922(n) has not been addressed by any *post-Heller* federal appellate court decision.[2] The district court in *United States v. Laurent*, — F.Supp.2d —, 2011 WL 6004606 (E.D.N.Y. 2011), upheld §922(n) under the intermediate standard of scrutiny. The defendant in *Laurent* was charged with a violation of §922(n) based on his alleged receipt of a firearm and ammunition after he was indicted for felony crimes of violence and related firearms offenses. The subject firearm was allegedly discovered in defendant's possession when he was taken into custody shortly after an attempted robbery. In assessing the burden that §922(n) imposes on the exercise of Second Amendment rights, *Laurent* stated that the statute is different from a prohibition on gun possession by a convicted felon which *Heller* described as "presumptively lawful." A person under indictment is presumed innocent and, until conviction, is not guilty of the charge that triggers the application of §922(n). "Thus, for purposes of construing the statute, a defendant under indictment is a law abiding citizen who remains eligible for Second Amendment protections." *Laurent,* at *23. In holding that §922(n) is subject to an intermediate level of constitutional scrutiny, *Laurent* stated:

> Unlike the total ban at issue in *Heller,* § 922(n) applies only to a narrow class of persons, rather than to the public at large. It is substantially similar to § 922(g)(9) and § 922(g)(8), the statutes at issue in *Skoien* and *Reese,* respectively. Both of those provisions prohibit the *possession* of firearms by narrow classes of persons who, based on their past behavior, are more likely to engage in domestic violence for an unlimited period. Section 922(n) is less restrictive than either of those statutes, since it only criminalizes shipping, transportation, or receipt of a firearm, not possession. It also only applies for the limited period between indictment and either acquittal or conviction. Intermediate, not strict, scrutiny is appropriate.

---

[2]The Government argues that *United States v. Lawton*, 366 F.3d 550, 553-4 (7th Cir. 2004), upheld the constitutionality of §922(n), based on the assumption that an individual's right to keep and bear arms is protected by the Second Amendment. It is questionable, however, whether the court actually reached the constitutionality of §922(n) since the defendant in that case was convicted under another statute, 18 U.S.C. §924(a)(1), for making a false statement to a firearms licensee.

The court also concluded that §922(n) survives intermediate scrutiny, although it conceded that "the government's categorical presumption that all individuals under indictment for a felony are more likely to misuse firearms is somewhat suspect." *Id.* at *26. In holding the the statute was not facially invalid, the court stated:

> As demonstrated by the facts of this case, it cannot be said that Congress' determination to criminalize the act of receiving a firearm while under indictment was unreasonable, and that "no set of circumstances ... under which [the statute] would be valid." *Salerno,* 481 U.S. at 745, 107 S.Ct. 2095. Laurent was initially indicted in state court for crimes arising out of gun play in a residential building. He was subsequently arrested after allegedly robbing another individual at gun point. The fact that Laurent was charged with the instant crime because he apparently committed a crime of violence while under indictment undermines any claim he might have that § 922(n) is not substantially related to preventing him from engaging in further violence. He is hardly the law-abiding householder with a gun at home to protect his family. The statute is thus also not unconstitutional as applied to this defendant.

*Laurent*, at *27.

Finally, in assessing whether §922(n) violated the defendant's right to due process, the court recognized that individuals under indictment have a procedural due process right not to be needlessly deprived of their liberties, including their Second Amendment rights. *Id.* at *29. The court further noted:

> In [*United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2972 (1987)], the Court upheld the constitutionality of the Bail Reform Act's provision permitting "pretrial detention on the ground that the arrestee is likely to commit future crimes" against a procedural due process challenge. *Id.* at 744, 750, 107 S.Ct. 2095. The provision withstood constitutional scrutiny precisely because it included procedural protections—including an individualized finding of risk to the public—which are absent from § 922(n). *Id.* at 750, 751–52, 107 S.Ct. 2095 (internal citations omitted) (emphasis added).

> Without an individual determination of risk by the court that issued the original indictment, erroneous deprivation is possible in at least some cases. While individuals with a history of violent offenses may reasonably be suspected to present a high risk of continuing this pattern while awaiting trial, the same cannot be said categorically of individuals with no criminal background under indictment for non-violent crimes. Because section § 922(n) does not require any individualized judicial consideration, it burdens all accused persons, even those who present no risks.

*Laurent*, at *30.

11

The court nevertheless concluded that the deprivation of the right to receive or transport a firearm would not have been erroneous in an individual judicial hearing for the subject defendant based on the charges in the underlying indictment and the circumstances pertaining to his receipt and possession of the firearm that gave rise to the charge under §922(n).

The *Laurent* court's analysis of §922(n) is persuasive and clearly consistent with the decisions by the federal courts of appeal upholding other provisions of 18 U.S.C. §922. The factual circumstances pertaining to Mr. Call are, however, substantially different from those pertaining to the defendant in *Laurent.* The indictment in this case does not charge Mr. Call with a crime of violence, nor does he have a prior criminal history of violence or crimes involving firearms. Mr. Call does not pose a substantial risk that he will engage in future gun violence. If he did, the Court would not have permitted him to retain three firearms for protection of himself and his family.

The prohibition in §922(n), however, is not irrelevant to the criminal charges against Mr. Call or the conditions of pretrial release that reasonably could or should be imposed on him.[3] The criminal complaint and the indictment allege that Mr. Call, acting through Citadel Gun & Safe, received stolen United States military equipment which he sold or offered to sell to confidential informants or undercover agents. Although the allegedly stolen items did not include firearms, ammunition or explosive devices, they did include military grade body armor, a chemical warfare suit, military strength laser pointers, heavy weapons mounts, and night vision goggles. The sale of such items may be relatively harmless, from the standpoint of future criminal activity, if sold to individuals who have no sinister plans. It also is reasonably foreseeable, however, that such items may be illegally purchased or obtained by persons engaged in criminal activity, such as members of drug trafficking organizations, gang members, or possibly political terrorists.

It is not uncommon for courts to impose conditions of pretrial release that attempt to prevent or reduce the risk that the defendant will engage in similar or related criminal activities to

---

[3] 18 U.S.C. §3142(g) provides that in imposing conditions of pretrial release, the court may consider the nature and circumstances of the offense charged and the weight of the evidence against the person. The weight of the evidence, however, is the least important factor under §3142(g). *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985).

those charged in the complaint or indictment. Defendants charged with crimes involving the use of computers or the internet may, for example, be denied or restricted in their future access to computers, including the use of computers at work. Similarly, a defendant may be precluded from engaging in a certain occupation or employment if there is a substantial risk that the defendant will use the access provided by the employment to commit additional crimes. Given the nature of the criminal charges against Mr. Call, a condition of pretrial release that he not engage in the shipment, transport or receipt of firearms or ammunition, is reasonable and consistent with the purpose of 18 U.S.C. §922(n).

**CONCLUSION**

Based on the foregoing, the Court concludes that 18 U.S.C. §922(n) is not unconstitutional on its face, and that its application to Mr. Call in this case does not violate his rights under the Second, Fifth or Eighth Amendments to the United States Constitution. The Court recognizes that the statutory prohibition falls more heavily on Mr. Call to the extent it prevents him from earning a lawful income through his business. The Court is willing to consider proposed conditions of pretrial release that would permit him to work at Citadel Gun & Safe if it can be done in a manner that does not violate 18 U.S.C. §922(n). Defendant's proposed condition that he will not personally order, touch, ship and sell ammunition is not sufficient to meet that requirement, however, because it does not address Mr. Call's managerial control over the business and its sale of ammunition. Accordingly,

**IT IS HEREBY ORDERED** that Government's Motion to Prohibit the Defendant from Possessing Firearms and Ammunition (#37) is **granted**, in part, and **denied**, in part as follows:

1.     The Government's motion is **denied** to the extent it seeks an order barring Defendant from possessing the three firearms and ammunition that the Court previously authorized Defendant to keep on October 6, 2011.

2.     The Government's motion is **granted** as follows: While under indictment in this case, Defendant is prohibited from shipping or transporting in interstate or foreign commerce any firearm or ammunition or from receiving any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. This includes any such acts that are performed by

other persons who are under the supervision and control of the Defendant in regard to such acts.

**IT IS FURTHER ORDERED** that Defendant may move the Court for permission to work at Citadel Gun & Safe if he can show that such employment will not involve him, directly or indirectly, in shipping or transporting in interstate or foreign commerce any firearm or ammunition or in receiving any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

DATED this 7th day of June, 2012.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge